STATE of Utah, Plaintiff and Respondent,

v.

Jerry Dee GRIFFITHS, Defendant and Appellant.

Nos. 860326, 860470.

Supreme Court of Utah.

Jan. 13, 1988.

Lynn R. Brown, Salt Lake City, for appellant in No. 860326.

Stephen I. Oda, Layton, for appellant in No. 860470.

David L. Wilkinson, David B. Thompson, Earl F. Dorius, Salt Lake City, for respondent.

HALL, Chief Justice:

Defendant appeals convictions from two separate trials. Since the cases were calendared close in time to one another, we have considered the appeals together.

### Case No. 860326

Defendant appeals his convictions of one count of aggravated robbery[1] and two counts of aggravated assault.[2] He advances three contentions of error: (1) refusal to give a cautionary instruction on eyewitness identification, (2) use of statements made by defendant not previously disclosed, in violation of a discovery order, and (3) introduction of testimony concerning defendant's prior bad acts.

On January 5, 1986, at approximately 7:00 p.m., the owner of Rocky Mountain Video, her husband, a counter clerk, and the store manager were deprived of the weekend receipts by a lone gunman wielding a cocked .357 Magnum. Without uncocking the gun, the robber placed it in his waistband and fled with about $300.

At about the same time, a patron of another business three doors away heard a gunshot and saw a man running with a decided limp. He described the man as having a light build and wearing a baseball cap, a dark, short jacket, and light pants, "perhaps faded Levis."

The victims described the robber as five feet seven inches tall, with dirty blond hair, a small moustache, an unshaven appearance, and a tooth missing or a gap in his upper teeth. He was also described as wearing a blue baseball cap, a T-shirt, Levis, and a Levi jacket.

A medical doctor testified that during the afternoon of January 6, 1986, he treated defendant for a gunshot wound to the right foot; that the wound appeared to have been caused by a high-velocity bullet fired from a gun in very close proximity to the body; and that the bullet had exited the bottom of defendant's foot, all of which was consistent with having been shot in the foot with a .357 Magnum tucked in one's belt. The doctor further related that defendant had told him that the wound was accidentally inflicted while exchanging a gun with an acquaintance, but the doctor testified that it would be unlikely for the wound to have been sustained under such circumstances.

At trial, all four of the victims, only three of whom had previously been able to identify defendant from a police photo array, identified defendant as the robber. However, only one of them had been able to identify defendant at a police line-up. When asked about their inconsistent identifications, the victims explained that they were unable to identify defendant at the line-up because defendant would not exhibit his teeth and because he had changed his hair color.

Another witness testified that defendant had altered his appearance by changing the color and length of his hair. She had seen defendant on December 23, 1985, and her description of how he looked on that date was consistent with the description given by the four victims. She then described how the change in the color and length of defendant's hair had changed his appearance.

---

1. In violation of Utah Code Ann. § 76–6–302 (1978).

2. In violation of Utah Code Ann. § 76–5–103 (1978).

While relating to the jury the circumstances surrounding defendant's arrest, a police officer interjected that he had told defendant that another warrant for his arrest was outstanding. Defense counsel objected, and the trial court admonished the jury to disregard the comment. Defendant's motion for a mistrial was denied.

Defendant called four witnesses. His mother testified that defendant had visited her on January 5 at 9:00 a.m. She further testified that defendant was on crutches and had a bandaged foot and that he told her his foot had "been caught in a Jeep." Another witness also testified that on the morning of January 5, defendant was on crutches and had a bloody, bandaged right foot. Defendant's ex-wife testified that defendant had hurt his foot in a Jeep and that she had called and talked to him at 7:00 p.m. at his mother's house in Murray, Utah, on January 5. Finally, a friend of defendant's testified that she was with him on the porch of his house in Salt Lake City, Utah, on the evening of January 4 and that as he was handed a gun by a man named Don or Dan, defendant was shot in the foot. She further testified that she and defendant spent that entire night and most of the next day at defendant's mother's house.

The prosecution recalled as a rebuttal witness the arresting officer, who testified concerning defendant's statements contained in police reports that were given to defendant just prior to trial. Specifically, the officer testified that defendant told him at the time of the arrest that the name of the man who passed him the gun was Mike. The witness also testified that defendant demonstrated to him that the gun had discharged while the firearm was twenty-six to twenty-eight inches away from defendant's body. Finally, the witness testified that defendant had told him that on January 5, he was at his mother's house until 6:30 p.m. and then he went to his home in Salt Lake City.

The prosecution called another rebuttal witness, who testified that defendant's female friend showed him where defendant was standing when the shooting took place. The witness further testified that he had examined the area and, based upon his training as a firearms expert, there was no evidence that a bullet had struck the porch of defendant's home. Moreover, the witness identified photographs he took of the porch to corroborate his testimony, and those photographs were introduced into evidence.

### I. Eyewitness Identification

 At all times pertinent to this case, the decision whether to caution the jury regarding the reliability of eyewitness identification was a matter within the sound discretion of the trial court.[3] In *State v. Reedy*,[4] we indicated that the failure to give such an instruction may constitute an abuse of discretion when the circumstances surrounding the eyewitness identification raise serious questions of reliability.[5] Consideration of the totality of the circumstances in the instant case prompts the conclusion that the trial court did not abuse its discretion and thus did not err in declining to give the requested cautionary instruction. This conclusion is necessary because defendant was identified as the robber by each of the victims, whose testimony was corroborated by compelling direct and circumstantial evidence of defendant's identity as the robber, as well as by the fact that he suffered the gunshot wound from his own gun, which he had placed in his waistband as he fled from the scene.

Moreover, under our pre-*Long* case law, we have repeatedly affirmed convictions

---

3. See, e.g., State v. Booker, 709 P.2d 342, 346 (Utah 1985), overruled, State v. Long, 721 P.2d 483, 487, 492 (Utah 1986). In State v. Long, a case which addressed the uncorroborated testimony of a single eyewitness, the Court abandoned the discretionary standard in favor of requiring a cautionary instruction whenever eyewitness identification is a central issue in the case and when such an instruction is requested. Inasmuch as the Long decision was given prospective effect only, it has no application in this case. See 721 P.2d at 487, 492.

4. 681 P.2d 1251 (Utah 1984), overruled, Long, 721 P.2d at 487, 492.

5. See 681 P.2d at 1254; see also Long, 721 P.2d at 487.

hinging upon eyewitness testimony despite the absence of a *Telfaire*-type instruction when the instructions given to the jury, taken as a whole, adequately advised the jury on the law pertaining to the case.[6] Specifically, this Court has noted that three general instructions cover the same substance as the *Telfaire* instruction: the State has the burden to prove the defendant guilty beyond a reasonable doubt, the jury is the exclusive judge of the witnesses' credibility, and the jury must find that the defendant committed all of the elements of the offense before it can find him guilty.[7] In the instant case, the trial court appropriately instructed the jury on the elements of the offenses charged, the prosecution's burden of proof beyond a reasonable doubt, and the role of the jury in assessing the credibility of witnesses. Therefore, the trial court did not err in instructing the jury.[8]

## II. *Discovery Violation*

Prior to trial, defendant obtained a discovery order requiring the State to disclose all statements made by defendant. The prosecutor failed to disclose defendant's statements to the arresting officer in which defendant explained how he received the gunshot wound, until shortly before trial, and then offered defendant's statement during rebuttal. The undisclosed explanation was at variance and inconsistent with the testimony of an alibi witness. When it became apparent that the prosecution's rebuttal testimony would impeach the testimony of defendant's alibi witness, defense counsel objected and, after the evidence was admitted, moved for a mistrial. The court denied any relief.

The State relies upon *State v. Knight*[9] in support of its argument that defendant is not entitled to relief in this case. In *Knight*, after having determined that the prosecutor violated his discovery duties, we reached the issue of whether the trial court abused its discretion by refusing to grant the defendant's requested relief.[10] We indicated that the determination of whether the trial court abused its discretion in denying a defendant relief under rule 16(g) of the Utah Rules of Criminal Procedure[11] turned upon "whether the prosecutor's failure to produce the requested information resulted in prejudice sufficient to warrant reversal under Rule 30."[12]

In *Knight*, we went on to say:

Because of the difficulties posed by the record's silence in cases involving a wrongful failure to disclose inculpatory evidence, it seems appropriate in such instances to place the burden on the State to persuade a court that the error did not unfairly prejudice the defense. Therefore, when the defendant can make a credible argument that the prosecutor's errors have impaired the defense, it is up to the State to persuade the court that there is no reasonable likelihood that absent the error, the outcome of trial would have been more favorable for the defendant.[13]

The State contends that defendant has failed to make a "credible argument" that the prosecutor's error impaired his defense, and it claims that even if such a showing has been made, the State has rebutted the presumption of prejudice. However, we find that defendant's argument fails for a more elementary reason.

■ A pivotal fact in our reversal of *Knight* was defense counsel's timely ef-

---

**6.** *E.g., Booker,* 709 P.2d at 346 (referencing *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972)).

**7.** *E.g. id.*

**8.** *See id.*

**9.** 734 P.2d 913 (Utah 1987).

**10.** *Id.* at 918.

**11.** That rule provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

**12.** 734 P.2d at 919. Rule 30(a) of the Utah Rules of Criminal Procedure provides, "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."

**13.** 734 P.2d at 921.

forts to obtain relief in order to mitigate the potential or suffered prejudice caused by the prosecutor's wrongful conduct.[14] Such was not the case at defendant's trial. Despite being informed of defendant's statements prior to trial and having reasonable knowledge that such statements might be used by the prosecution, defense counsel did not move for a continuance, to which he would have been entitled. Thus, under the facts of this case, we conclude that defendant waived relief under rule 16(g) as implemented in *Knight* by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct.[15]

### III. *Evidence of Prior Misconduct*

Defendant contends that the trial court committed reversible error by admitting evidence of his prior misconduct through two of the prosecution's witnesses.[16] We view his contentions to be without merit.

In the first instance complained of, during the rebuttal testimony of the arresting officer, the prosecutor unintentionally evoked a response which revealed the existence of an outstanding warrant for defendant's arrest in another unrelated matter. Thereupon, the trial court admonished the jury to disregard the statement pertaining to the warrant. After the jury retired to deliberate, defendant moved for a mistrial, which motion the court denied.

■ While it was error to introduce evidence of other wrong-doing by defendant, we are not persuaded that the improper reference to the warrant constitutes more than harmless error. The witness's reference to the warrant was very brief and was only made in passing, stating no details of the circumstances which caused the warrant to issue or of the offense to which it was related. Indeed, the prompt action of the trial court in admonishing the jury to

disregard the testimony obviated any prejudice that might have resulted. It appears that there is no reasonable likelihood that without the error the jury would have reached a different verdict.[17]

In the second instance complained of, defendant urged the trial court not to permit the prosecution's witness to testify about the significant change in defendant's appearance between the time she saw him in her store on December 23 and the time he appeared for the line-up. Defendant contended that such testimony could only leave the impression that the witness had also been defendant's victim in an unrelated robbery.

■ It is well settled that trial court rulings on the admissibility of evidence are not to be overturned in the absence of a clear abuse of discretion.[18] Such is not the case in this instance. The trial court did not allow the witness to describe the circumstances of her encounter with defendant on December 23, and only by conjecture could the conclusion be reached that the witness had also been a victim of defendant. The trial court, of course, instructed the jurors that their decision could only rest upon the evidence and that they were not free to speculate or conjecture.

The convictions and judgments are affirmed.

### Case No. 860470

■ Defendant was convicted of aggravated robbery.[19] He seeks a new trial, his contention being that he was denied the right of compulsory attendance of five alibi witnesses.

All five of the witnesses were subpoenaed and in fact appeared for trial on June 19, 1986. However, prior to any of the witnesses' testifying, the court declared a

---

14. *Id.* at 919.

15. *See id.*

16. Rule 404(b) of the Utah Rules of Evidence provides, in pertinent part, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

17. *See Knight,* 734 P.2d at 919 (citing Utah R.Crim.P. 30).

18. *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986); Utah R.Evid. 103(a).

19. In violation of Utah Code Ann. § 76–6–302 (1978).

mistrial. At a subsequent trial about one month later, two of the five witnesses failed to appear. Defendant claims that he moved for a continuance of the trial and that the trial court abused its discretion in refusing to grant a continuance.

A review of the record, including the trial transcript, reveals that no motion was made for a continuance. Indeed, no motion or objection of any kind was made concerning the missing witnesses. Inasmuch as the issue presented was not preserved, it may not be advanced for the first time on appeal.[20]

The conviction and judgment are affirmed.

STEWART, Associate C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

20. *E.g., State v. Robbins,* 733 P.2d 132, 133 (Utah 1987) (per curiam).