2010 UT App 351

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jullyn DOYLE, Defendant and Appellant.**

No. 20090148–CA.

Court of Appeals of Utah.

Dec. 9, 2010.

**208**

Michael S. Brown and Michael D. Esplin, Provo, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and CHRISTIANSEN.

## MEMORANDUM DECISION

### CHRISTIANSEN, Judge:

¶ 1 Defendant Jullyn Doyle appeals her convictions for possession or use of a con-

trolled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2010),[1] and possession of drug paraphernalia, *see id.* § 58–37a–5(1). Doyle argues that the trial court (1) improperly denied her motions to dismiss and to arrest judgment that were based on alleged prosecutorial misconduct and an alleged discovery violation, and (2) improperly admitted evidence of prior bad acts. We affirm.

### I. Prosecutorial Misconduct and Discovery Violations

¶ 2 Doyle contends that the prosecutor knew or should have known that the State's material witness, Shantel Cuenca, had given false testimony and that the prosecutor thus suborned perjury when he failed to correct Cuenca's false testimony. Specifically, Doyle argues that Cuenca testified falsely that she had not received a plea deal in exchange for her testimony at Doyle's trial,[2] when in fact the State had allowed Cuenca to plead guilty to reduced charges in exchange for her testimony against Doyle and another defendant.[3]

¶ 3 We agree that the prosecutor knew or should have known that Cuenca testified incorrectly and that the prosecutor committed misconduct by failing to immediately correct Cuenca's testimony.[4] *See State v. Gordon*, 886 P.2d 112, 116 (Utah Ct.App.

---

1. Although this statute has been amended since Doyle committed the crime, no changes were made to the provisions relevant to our determination. *See* Utah Code Ann. § 58–37–8 amend. notes (Supp.2010). We accordingly cite to the most recent version of the statute as a convenience to the reader.

2. The prosecutor asked Cuenca, "Were you ever given a deal on your charges for—in exchange for your testimony today?" Cuenca replied, "No." Doyle's counsel, on cross examination, asked Cuenca a similar question, and Cuenca again denied having taken any "deals." In denying Doyle's motions to dismiss and to arrest judgment, the trial court determined that, despite the false testimony, Cuenca did not commit perjury and the prosecutor "did not suborn perjury" because Cuenca, in not considering the reduction of her charges a deal, possibly believed that she was answering truthfully.

3. Cuenca was charged with possession of methamphetamine with intent to distribute, a first degree felony, along with two other counts, all relating to the events in the underlying case.

In exchange for her testimony for the State, she pleaded guilty to possession of methamphetamine within a drug-free zone, a second degree felony, and the other charges were dropped. In a second, unrelated case, Cuenca was charged with distribution of methamphetamine within a drug-free zone with priors, possession of drug paraphernalia within a drug-free zone, and giving false information to a police officer. In exchange for Cuenca testifying against Doyle and pleading guilty to giving false information and distribution of methamphetamine, the State dropped the drug-free zone enhancement from the distribution charge and the entire paraphernalia charge. Cuenca was sentenced concurrently to five years to life. The trial court concluded that Cuenca believed she had not obtained a deal because she received a five-to-life sentence.

4. It is particularly troubling that the prosecutor did not remedy Cuenca's misstatement given that the prosecutor at trial was the same prosecutor who entered into the plea agreements with Cuenca.

1994) (noting that due process of law requires that "when a prosecutor is aware that testimony is false, he or she has a duty to correct the false impression; failure to do so requires reversal 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury' " (citations omitted)). Nevertheless, we affirm Doyle's conviction because there is not a reasonable likelihood that the false testimony affected the jury's ultimate verdict. *See id.; see also United States v. Bagley,* 473 U.S. 667, 679–80, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (explaining that a prosecutor's knowing use of false testimony "is considered material unless failure to disclose it would be harmless beyond a reasonable doubt"); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (stating that a prosecutor may not knowingly use false evidence, regardless of whether the prosecutor solicited the false testimony or merely allowed it to stand uncorrected). The effective advocacy by Doyle's attorney in this case rendered the false testimony harmless. Cuenca's motive for testifying had clearly been revealed because of Doyle's diligent efforts to locate the plea agreements, thorough cross examination of Cuenca, and the introduction of the testimony of Cuenca's lawyer.[5] Moreover, the prosecutor ultimately acknowledged the existence of the plea agreements in his closing argument. Doyle and the State thus provided the jury with the facts it needed to weigh Cuenca's credibility. Consequently, Doyle was not prejudiced by Cuenca's false testimony and the prosecutor's failure to timely correct it.

■ ¶ 4 Next, Doyle contends that the State violated her due process rights when it failed to produce any plea agreements the State had offered to codefendants, despite Doyle's requests. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment …."); *see also United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (explaining that suppression of evidence favorable to an accused, even without a request, violates due process). In Utah,

> the State has two independent obligations to provide evidence to the defense. First, the State has a duty under the Due Process Clause of the United States Constitution to provide, without request by the defendant, all exculpatory evidence. Second, when required by court order, the State must disclose evidence pursuant to Rule 16 of the Utah Rules of Criminal Procedure.

*State v. Rugebregt,* 965 P.2d 518, 522 (Utah Ct.App.1998) (internal quotation marks omitted).

■ ¶ 5 A due process or *"Brady* violation occurs only where the state suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a 'reasonable probability' that 'the result of the proceeding would have been different.' " *State v. Bisner,* 2001 UT 99, ¶ 33, 37 P.3d 1073 (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375). In *Bisner,* the Utah Supreme Court held there was no *Brady* violation where the defendant learned before the trial began of the State's agreement to reduce a witness's sentence in exchange for his testimony against the defendant. *See id.* ¶ 37. The supreme court noted, "Not only does the defense admit that it knew about this alleged agreement days before trial, but [the defendant]'s attorney actually used the information for the precise purpose the Constitution requires its disclosure: impeachment." *Id.*

5. The prosecutor informed Doyle just before the trial began that the State intended to call Cuenca as its witness to testify against Doyle, which testimony was contrary to Cuenca's preliminary hearing testimony. Acting on this information, Doyle managed to locate one plea agreement between Cuenca and the State before Cuenca testified during the State's case in chief. Doyle then cross examined Cuenca regarding her statement that she had not accepted a deal. Additionally, on the second day of trial, armed with Cuenca's second plea agreement, Doyle called Cuenca's lawyer, Gunda Jarvis, as a witness. Doyle, through Jarvis, entered both of Cuenca's written plea statements into evidence and elicited Jarvis's testimony that Cuenca was not telling the truth in denying the existence of the plea agreements.

¶ 6 While we acknowledge that the State certainly had a duty to disclose the plea agreements,[6] Doyle took the initiative to locate and use Cuenca's actual plea agreements to impeach her trial testimony. Although pretrial disclosure of Cuenca's plea agreements may have permitted further development of this line of questioning, the record shows that Doyle impeached Cuenca's credibility as extensively and thoroughly as she could have during cross examination and through presentation of Jarvis's testimony. Accordingly, we conclude that there was no *Brady* violation and the trial court did not abuse its discretion when it denied both of Doyle's motions. *See id.* ¶ 31.

¶ 7 Doyle also argues that the State failed to produce evidence under rule 16 of the Utah Rules of Criminal Procedure—its second "independent obligation[ ] to provide evidence to the defense," *Rugebregt,* 965 P.2d at 522—because the prosecutor failed to provide evidence in response to her request for production of "[a] copy of any . . . written or verbal offers to any co-defendant in this case in exchange for testimony against the Defendant." The State must produce discovery "as soon as practicable following the filing of charges and before the defendant is required to plead" and "has a continuing duty to make disclosure." Utah R.Crim. P. 16(b). We agree with Doyle that the State was required to produce Cuenca's plea agreements.

¶ 8 Even though the State improperly withheld the plea agreements before trial,[7] *see Medel v. State,* 2008 UT 32, ¶ 24, 184 P.3d 1226 (setting forth the State's two require-

ments when responding to discovery as "[f]irst, . . . the prosecution must either produce all of the material requested or specifically identify material that will not be produced" and "[s]econd, the prosecution has a continuing duty throughout the proceedings to disclose any additional material evidence that falls within the scope of the request"), Doyle waited until the close of the State's case to raise the argument that the State had violated rule 16, *see* Utah R.Crim. P. 16(g) (providing that when a party has "failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances"). Therefore, the trial court correctly ruled that Doyle waived her relief "by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct." *State v. Griffiths,* 752 P.2d 879, 883 (Utah 1988); *see also* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *Rugebregt,* 965 P.2d at 522 ("When the prosecution introduces unexpected testimony, a defendant 'essentially waive[s] his right to later claim error' if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g)." (alteration in original) (citation omitted)).

¶ 9 Moreover, even if we were convinced that Doyle had not waived her right to relief from the State's discovery violation, the violation did not prejudice Doyle, as we stated

---

6. "[E]vidence favorable to the accused," *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), includes exculpatory and impeachment evidence, *see United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady* ]." *Bagley,* 473 U.S. at 677, 105 S.Ct. 3375 (alterations in original) (internal quotation marks omitted). Evidence to impeach a witness includes, as here, evidence of a plea bargain with the State. *See, e.g., Giglio v. United States,* 405 U.S. 150, 152, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 265, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

7. In response to Doyle's request for production of documents, the State replied that as of December 2007 "[n]o offers ha[d] been made to any codefendants in exchange for testifying against [Doyle]." And yet, after the State offered Cuenca a deal on May 5, 2008, in exchange for her testimony against Doyle, rather than disclosing the requested documents the State did nothing until it filed a supplemental discovery response on September 10, 2008, in which it objected to the request on the basis that such offers made to codefendants were not discoverable. Not only was this objection untimely given that the State acknowledged its discovery obligations in its initial response, the objection was also meritless given the exculpatory nature of the information that Doyle requested, *see supra* note 6.

above. *See State v. Basta,* 966 P.2d 260, 265 (Utah Ct.App.1998) ("[F]or us to reverse defendant's conviction based on the prosecutor's discovery violation, we must conclude that violation 'resulted in prejudice sufficient to warrant reversal under Rule 30' of the Utah Rules of Criminal Procedure." (quoting *State v. Knight,* 734 P.2d 913, 919 (Utah 1987))).

¶ 10 In sum, although the trial court failed to recognize the prosecutor's misconduct, there was no abuse of discretion in its denial of Doyle's motions to dismiss and to arrest judgment due to Doyle's knowledge and use of the plea agreements before the conclusion of the State's case, her opportunity to impeach Cuenca's testimony, and her failure to timely raise the discovery violation. As explained above, Doyle has failed to demonstrate that she was prejudiced by any prosecutorial misconduct or discovery violations.

¶ 11 We do, however, recognize that the prosecutor committed several discovery, *see* Utah R.Crim. P. 16(a), and ethical violations, *see, e.g.,* Utah R. Prof'l Conduct 3.3(a)(3), 3.4(a)–(c), 3.8(d), and we are compelled to again address the prosecutor's serious misconduct. First, the prosecutor failed to object when providing the first discovery responses, which had the effect of misleading Doyle. *See* Utah R. Prof'l Conduct 3.4(a), (c). Second, the prosecutor's objection, grounded on the alleged nondiscoverability of the plea agreements, was meritless. *See* Utah R.Crim. P. 16(a)(4)–(5). Third, the prosecutor failed to disclose the plea agreements and acknowledged them only in closing argument—after Doyle had located and introduced them into evidence. *See id.* R. 16(a)(4); Utah R. Prof'l Conduct 3.8(d). Finally, the prosecutor failed to correct Cuenca's false testimony. *See* Utah R. Prof'l Conduct 3.3(a)(3), 3.4(b).

■■■ ¶ 12 For all lawyers, and especially for prosecutors, "conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms ... [and] we must be mindful of

our obligations to the administration of justice, which is a truth-seeking process." Utah Standards of Professionalism & Civility 14–301. Recently we highlighted, and it bears repeating, the United States Supreme Court's caution to prosecutors that their " 'role transcends that of an adversary: [a prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *State v. Hamblin,* 2010 UT App 239, ¶ 18 n. 5, 239 P.3d 300 (omissions in original) (quoting *United States v. Bagley,* 473 U.S. 667, 675 n. 6, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Moreover,

> prudence dictates that all parties—especially prosecutors and others in the business of justice—ought to err on the side of disclosure. Clearly, the better practice for the State is to disclose in a timely fashion any evidence conceivably required to be disclosed under *Brady* rather than to find itself in the awkward position of having to rationalize and defend nondisclosure on appeal.

*Id.* ¶ 18 (footnote omitted).

## II. Prior Bad Acts Evidence

■■■ ¶ 13 Doyle's second contention on appeal is that the trial court abused its discretion when it denied her motion in limine, thereby improperly allowing the State to admit evidence related to Doyle's prior drug use[8] in violation of rules 403 and 404(b) of the Utah Rules of Evidence. We review the trial court's decision to allow this evidence for abuse of discretion. *See State v. Bisner,* 2001 UT 99, ¶ 54, 37 P.3d 1073.

> [R]ule 404(b) allows for the introduction of bad acts evidence if the evidence satisfies the following three criteria: (1) the evidence is offered for a proper, noncharacter purpose, such as one of those listed in rule 404(b); (2) the evidence meets the require-

---

8. The evidence included a 2006 conviction for driving while under the influence of methamphetamine, Doyle's admission during the 2006 arrest that she had taken methamphetamine, the toxicology report from the 2006 arrest showing methamphetamine in her blood, and a toxicology report from a 2007 arrest showing methamphetamine in her blood.

ments of rule 402;[9] and (3) the evidence meets the requirements of rule 403. *State v. Allen*, 2005 UT 11, ¶ 16, 108 P.3d 730, *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005). Under rule 404(b), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "While rule 404(b) lists examples of some of the legitimate purposes for which other bad acts evidence may be admitted, the list is not exhaustive." *State v. Houskeeper*, 2002 UT 118, ¶ 28, 62 P.3d 444. In addition, "[w]hen prior bad act evidence establishes a constitutive element of the crime and is directly probative of a disputed issue it may be admissible even if it tends to prove that defendant has committed other crimes." *State v. Cox*, 787 P.2d 4, 5 (Utah Ct.App.1990); *accord State v. Taylor*, 818 P.2d 561, 569 (Utah Ct.App.1991) ("When evidence may establish constitutive elements of the crime of which the defendant is accused . . . it is admissible even though it tends to prove that the defendant has committed other crimes." (internal quotation marks omitted)).

¶ 14 To establish Doyle's guilt for illegal possession or use of a controlled substance, the State was required to prove that Doyle "(1) knowingly and intentionally, (2) possesse[d or used], (3) a controlled substance." *State v. Miller*, 2008 UT 61, ¶ 15, 193 P.3d 92; *see also* Utah Code Ann. § 58-37-8(2)(a)(i) (Supp.2010) ("It is unlawful . . . for any person knowingly and intentionally to possess or use a controlled substance . . . ."). Because the State presented Doyle's prior convictions to establish an element of the crime—intent to possess—it offered the evidence for a proper, noncharacter purpose.

¶ 15 In addition, the evidence, although clearly prejudicial, was not *unfairly* prejudicial under rule 403. *See* Utah R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially out-

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). In *State v. Shickles*, 760 P.2d 291 (Utah 1988), the Utah Supreme Court outlined several guiding factors to be considered in balancing the probative value of bad acts evidence against its prejudicial effect. *See id.* at 295–96. These *Shickles* factors include the following:

> [ (1) ] the strength of the evidence as to the commission of the other crime, [ (2) ] the similarities between the crimes, [ (3) ] the interval of time that has elapsed between the crimes, [ (4) ] the need for the evidence, [ (5) ] the efficacy of alternative proof, and [ (6) ] the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* (internal quotation marks omitted).

¶ 16 The evidence underlying Doyle's 2006 driving under the influence of methamphetamine was strong, given that she was convicted of the crime. Also, although Doyle's criminal conduct in this instance involved constructive possession of methamphetamine rather than driving under the influence, the evidence that she used methamphetamine in 2006 and 2007 is clearly probative of Doyle's intent to possess the substance. And, a short period of time elapsed between the crimes. In addition, "there was a great need for the evidence and no alternative way to secure it. The evidence was essential to the State's case as there was no effective alternative available to identify [Doyle] as the constructive possessor of the [methamphetamine], an essential element of the crime." *Taylor*, 818 P.2d at 571–72. Although the trial court surely could have been clearer on the record about its analysis of the prejudicial effect of the bad act evidence, our analysis of the *Shickles* factors leads us to conclude that the trial court did not abuse its discretion in denying Doyle's motion in limine.

¶ 17 Affirmed.

---

9. Doyle does not dispute the relevance of the evidence under rule 402 of the Utah Rules of

Evidence. *See* Utah R. Evid. 403 ("All relevant evidence is admissible").

¶ 18 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and GREGORY K. ORME, Judge.