IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100310-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 1, 2012) |
| William Alfred Dick, | ) | |
| | ) | 2012 UT App 161 |
| Defendant and Appellant. | ) | |

-----

Eighth District, Vernal Department, 081800093
The Honorable A. Lynn Payne

Attorneys:    Dean N. Zabriskie, Rhome D. Zabriskie, and Stephen R. Allred, Provo,
              for Appellant
              Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges Voros, Orme, and Thorne.

ORME, Judge:

¶1     Defendant appeals his several convictions, most of which concern illegal possession of a controlled substance. After Defendant was tried and sentenced, he moved for a new trial, alleging that the State had withheld evidence regarding a rebuttal witness in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied that motion. Defendant appeals that ruling and further asserts that the State violated rule 16 of the Utah Rules of Criminal Procedure.

¶2     "When reviewing a trial court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion by the trial court. At the same time, however,

we review the legal standards applied by the trial court in denying such a motion for correctness." *State v. Bisner*, 2001 UT 99, ¶ 31, 37 P.3d 1073 (citations and internal quotation marks omitted). Defendant claims that the State violated *Brady* and its progeny by not providing notice prior to trial about its potential rebuttal witness, his likely testimony, and other pertinent information, most notably taped interviews of the rebuttal witness by law enforcement. Defendant asserts that the tapes "revealed that officers wanted [the rebuttal witness] to help them with information to convict [Defendant] and would get him a deal." Consequently, Defendant contends that had the State provided this information, he would have been able to find a former jailmate of the rebuttal witness, who would have been able to undercut the latter's testimony. Defendant also argues that the State violated rule 16 of the Utah Rules of Criminal Procedure by not disclosing the identity of its rebuttal witness until trial. A trial court's ruling on a rule 16 issue is reviewed for an abuse of discretion. *See State v. Buck*, 2009 UT App 2, ¶ 10, 200 P.3d 674.

¶3 The analytic approach for resolving an appeal like this one, in which a defendant claims violations of *Brady* and rule 16 because the State failed to produce evidence that a witness was induced to testify by a favorable plea deal, was recently revisited in *State v. Doyle*, 2010 UT App 351, 245 P.3d 206 (mem.), *cert. denied*, 251 P.3d 245 (Utah 2011). As explained in *Doyle*,

> [a] due process or "*Brady* violation occurs only where the state suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a 'reasonable probability' that 'the results of the proceeding would have been different.'"

*Id.* ¶ 5 (quoting *Bisner*, 2001 UT 99, ¶ 33 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985))). In *Doyle*, defense counsel located the plea agreements in question by the time of trial and used them in cross-examination. Because the ultimate outcome of the trial was not affected, this court concluded that no *Brady* violation had occurred. *See id.* ¶ 6.

¶4 We confirmed in *Doyle* that the prosecution has an additional obligation under rule 16 of the Utah Rules of Criminal Procedure to "produce discovery 'as soon as

practicable following the filing of charges and before the defendant is required to plead' and 'has a continuing duty to make disclosure.'" *Id.* ¶ 7 (quoting Utah R. Crim. P. 16(b)). However, we held that the trial court in that case correctly ruled that the defendant "waived her relief 'by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct.'" *Id.* ¶ 8 (quoting *State v. Griffiths*, 752 P.2d 879, 883 (Utah 1988)). *See also* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *State v. Rugebregt*, 965 P.2d 518, 522 (Utah Ct. App. 1998) ("When the prosecution introduces unexpected testimony, a defendant 'essentially waive[s] his right to later claim error' if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g).") (alteration in original) (citation omitted). Furthermore, for reversal to be appropriate under rule 16, the violation must prejudice the defendant. *See Doyle*, 2010 UT App 351, ¶ 9; *State v. Basta*, 966 P.2d 260, 265 (Utah Ct. App. 1998) ("[F]or us to reverse defendant's conviction based on the prosecutor's discovery violation, we must conclude that [the] violation 'resulted in prejudice sufficient to warrant reversal under Rule 30' of the Utah Rules of Criminal Procedure.") (quoting *State v. Knight*, 734 P.2d 913, 919 (Utah 1987)).

¶5     In this case, "it is clear that the defense knew about the possibility of the inducement [of the rebuttal witness to testify] well before the trial concluded," yet "the defense utterly failed to make use of this knowledge during trial." *Bisner*, 2001 UT 99, ¶ 38. "'[C]ourts universally refuse to overturn convictions where the evidence at issue is known to the defense prior to *or during trial*, where the defendant reasonably should have known of the evidence, or where the defense had the opportunity to use the evidence to its advantage during trial but failed to do so.'" *State v. Pinder*, 2005 UT 15, ¶ 25, 114 P.3d 551 (quoting *Bisner*, 2001 UT 99, ¶ 33) (emphasis added).

¶6     Defendant knew about the existence of other evidence related to the rebuttal witness before the end of trial.[1] During a break at trial, the State informed defense counsel, "I've told you all along I've got two people" that could attest to Defendant's drug use in February 2008. Defense counsel failed to follow up as to the identities of the possible witnesses. After Defendant testified in his own defense and volunteered that

---

[1]Defense counsel was afforded the opportunity to view the rebuttal witness's case file at trial and declined. The videotaped interviews of the rebuttal witness by law enforcement officers were not disclosed until after trial.

he had not used or dealt methamphetamine in February 2008, the State called the rebuttal witness to counter that testimony. Defense counsel did not ask for a continuance at that time and chose not to review the rebuttal witness's plea affidavit, despite the trial court's offer to make it available. Indeed, defense counsel stated, "We don't need any further information as it relates to [the rebuttal witness]. We're prepared to go forward with [the State's] next witness."[2]

¶7      In response to Defendant's post-trial *Brady* challenge, the State included affidavits from both Defendant's prosecutor and the rebuttal witness's trial attorney stating that there was never a deal between the rebuttal witness and the State for the rebuttal witness to testify against Defendant. The rebuttal witness's attorney stated that he told the rebuttal witness that "whether or not he testified[,] the sentence recommendation would be the same." The trial court conducted an in camera review of the tape recorded conversations between the rebuttal witness and law enforcement officers and confirmed that no deal was in place to induce the rebuttal witness to testify against Defendant. Accordingly, no *Brady* violation occurred.[3]

---

[2]The jailmate's potential connection to the rebuttal witness and their alleged conversation was not known to the State until after Defendant's sentencing. Thus, this information was not withheld by the State.

[3]Even if the defense could not have learned of the evidence without an express disclosure by the State, that, in itself, would not establish a reversible *Brady* violation.

> [S]trictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Here, the trial court found "no credible evidence that . . . the rebuttal witness testified falsely" and "no evidence that . . . the rebuttal witness believed he was required to testify as a condition of his plea

(continued...)

¶8    Turning to Defendant's claim that the State violated rule 16 by failing to provide evidence about the rebuttal witness prior to trial, we conclude that Defendant waived his right to challenge that evidence when he did not request a continuance or seek other relief under rule 16(g) of the Utah Rules of Criminal Procedure. *See State v. Doyle*, 2010 UT App 351, ¶ 8, 245 P.3d 206 (mem.), *cert. denied*, 251 P.3d 245 (Utah 2011). Defendant had several opportunities to inquire further about the rebuttal witness or other potential rebuttal witnesses. Defense counsel did not request a continuance to investigate the rebuttal witness, even going so far as to say, "We don't need any further information as it relates to [the rebuttal witness]." Defendant waived any potential claim under rule 16 when he not only failed to pursue relief under rule 16 at the time of trial but also affirmatively declined the court's invitation to access further information for use during cross-examination.

¶9    Finally, even if any of the foregoing analysis is flawed and it were to be concluded that the trial court erred in its handling of the *Brady* or rule 16 issues, the result would not be different. It is axiomatic that to secure a new trial, a defendant must not only show that error occurred but also that it was prejudicial, i.e., that it affected the outcome in such a way that we can say that, without the error, there is a reasonable likelihood that the result would have been more favorable to the defendant. *See State v. Knight*, 734 P.2d 913, 920 (Utah 1987) (in reviewing claim that prosecutor violated "discovery duties, we must determine whether there is a reasonable likelihood that the outcome of [the defendant]'s trial would have been more favorable to him had the prosecution revealed the requested information"). *See also Doyle*, 2010 UT App 351, ¶ 8 (noting applicability of same prejudice test to *Brady* violations).

¶10    In this case, the evidence against Defendant is so overwhelming that it is not likely that, even had the jailmate testified to refute the rebuttal witness's testimony, the result of the trial would have been any different. The trial court found that the evidence at issue "was not material to the outcome of the trial." We agree. Defendant was found

---

[3](...continued)
agreement." Additionally, the court had "little confidence in the reliability of . . . the jailmate's testimony." It is unlikely that evidence related to the rebuttal witness would have "put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 290 (citation omitted). This is a subject that we revisit at the conclusion of this decision.

passed out in the front seat of a car parked in front of the Uintah Care Center, with the car's engine running and its turn signal on. The driver-side window was partially down, despite the cold February morning. Defendant was wearing nothing but a "short sleeved shirt" that was "partially unbuttoned." The responding police officer was not able to rouse Defendant by "yelling" at him or "bang[ing] on the window," and ultimately resorted to reaching through the open window, "grabb[ing] [Defendant] by the arm, and sh[aking] him." Officers arrested Defendant for lewdness and conducted a search of the vehicle, employing a drug-sniffing dog, and discovered a hunting knife,[4] drugs, and drug paraphernalia. The dog picked up the scent of drugs on the clothes found on the front seat, as well as on a bandana wrapped around a grocery bag that contained various illegal drugs packaged in a manner typically associated with distribution.

¶11 When officers contacted the registered owner of the vehicle that morning, she said that she had allowed Defendant to borrow the car the previous afternoon and had not heard from him after 11:30 p.m. She said that the drugs, paraphernalia, and clothes were not in the car at the time she lent it to Defendant. A DNA expert testified that the combined profile from the "touch DNA" found on the bandana matched Defendant, while a randomly selected person would only have a 1 in 9,620 chance of matching the combined profile.

¶12 At trial, Defendant claimed for the first time that the vehicle had earlier become stuck in four to five inches of snow after he visited a friend in a remote part of Uintah County. He then spent five to six hours on his hands and knees digging the car out of the snow with the knife that was later discovered in the vehicle, which he had the good fortune to find on the back seat. Defendant claimed that, on his return drive, he was afraid he was going to hit something because he was drifting in and out of consciousness, so he pulled into the parking lot of the Uintah Care Center, even though he knew there was a hospital just a few blocks away. He claimed that he then took his wet pants, shoes, and socks off and passed out—not from the effects of drugs but because of his exertions over the course of the night—inexplicably disregarding other dry clothes in the vehicle and somehow overlooking the advisability of rolling up the window.

---

[4]Defendant later stipulated that he was a restricted person not legally permitted to carry a dangerous weapon.

¶13     The myriad of other evidence against Defendant overcomes any possible rehabilitation of Defendant's credibility that may have resulted from using the jailmate to impeach the rebuttal witness's testimony about Defendant's methamphetamine use and dealing in February 2008.

¶14     Affirmed.


_____
Gregory K. Orme, Judge


-----


¶15     WE CONCUR:


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


_____
William A. Thorne Jr., Judge