2011 UT App 412

**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Donald COOPER, Defendant and Appellant.**

**No. 20090396–CA.**

Court of Appeals of Utah.

Dec. 8, 2011.

Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant.

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

## AMENDED OPINION [1]

CHRISTIANSEN, Judge:

¶ 1 Defendant Richard Donald Cooper challenges his jury convictions for four counts of filing a wrongful lien, *see* Utah Code Ann. § 76-6-503.5 (2008).[2] Specifically, he asserts that the trial court erred in taking judicial notice of a prior judicial determination that a purported lien Defendant had previously filed was wrongful and in denying his motion for a mistrial. We affirm.

## BACKGROUND [3]

¶ 2 In 1997, Mary and Richard Pace purchased a sixty-three percent property interest at a tax sale. Due to complications that arose in asserting their rights to the property, the Paces hired attorney Rodney Rivers, who conducted a title search that revealed several people with a potential interest in the property. Rivers then filed a quiet title action against Defendant; Defendant's son, Jerry Cooper; and other potential owners. Ultimately, Judge Lynn W. Davis entered a default judgment against Defendant, which resulted in the Paces establishing their interest in the property in their quiet title action.

¶ 3 On November 15, 2004, Defendant recorded a document titled "Administrative Judgment" with the Utah County Recorder's Office. The Administrative Judgment stated, in part, that the Paces, Rivers, and Judge Davis were jointly and severally liable to Defendant's son, Jerry Cooper, in the

---

1. This Amended Opinion replaces the Opinion in Case No. 20090396-CA issued on August 18, 2011.

2. For the reader's convenience we cite to the current version of the code throughout this opinion because the relevant provisions are unchanged from the version in effect at the time of Defendant's actions, unless we specifically indicate otherwise.

3. " 'On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly.' " *State v. Allen*, 2005 UT 11, ¶ 2, 108 P.3d 730 (citation omitted), *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005).

amount of $4.2 million. On July 21, 2005, Judge Anthony Quinn entered a civil judgment declaring this Administrative Judgment a wrongful lien as it related to Judge Davis.

¶4 On January 24, 2007, Defendant signed and recorded another document titled "Consent Judgment." The Consent Judgment referred to the Administrative Judgment and purported to enable Defendant to collect certain liability, debt, or obligations pursuant to the Administrative Judgment. The Consent Judgment listed the Paces, Rivers, and Judge Davis as debtors and included an address for each party. The Consent Judgment also stated that the Paces, Rivers, and Judge Davis were jointly and severally liable to Defendant in the amount of $4.2 million, and that if this amount was not paid within ninety days, it would "become a 'commercial lien.'"

¶5 Subsequently, the State charged Defendant with four counts of filing a wrongful lien for recording the Consent Judgment.[4] See Utah Code Ann. § 76–6–503.5. During the trial, the court took judicial notice of Judge Quinn's prior determination that the Administrative Judgment was a wrongful lien and denied Defendant's motion for a mistrial based on Judge Davis's opinion testimony. The jury convicted Defendant on all four counts. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶6 Defendant asserts that the trial court violated rules 201 and 403 of the Utah Rules of Evidence by taking judicial notice of Judge Quinn's 2005 civil determination that the Administrative Judgment was a wrongful lien. "We review the [trial] court's judicial notice of prior adjudicated facts under Rule 201 of the Utah Rules of Evidence for abuse of discretion." In re J.B., 2002 UT App 267, ¶14, 53 P.3d 958. "[T]he ordinary [rule] 403 analysis ... favors admissibility and the appraisal of probative versus prejudicial value

of evidence is entrusted to the discretion of the trial judge. That discretion will not be upset on appeal absent manifest error." State v. Moore, 788 P.2d 525, 527 (Utah Ct.App.) (citations omitted), cert. denied, 800 P.2d 1105 (Utah 1990).

■ ¶7 Defendant also argues that the trial court abused its discretion in denying his motion for a mistrial based on Judge Davis's testimony.

A trial court's denial of a motion for a mistrial will not be reversed absent an abuse of discretion. In exercising its discretion, "the trial court should not grant a mistrial except where the circumstances are such as to reasonably indicate ... that a fair trial cannot be had" and that a mistrial is necessary in order to avoid injustice. On appeal, the prerogative of a reviewing court is much more limited. Unless the trial court's determination "is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." We defer to the trial court's ruling because of the "advantaged position of the trial judge to determine the impact of events occurring in the courtroom on the total proceedings."

State v. Wach, 2001 UT 35, ¶45, 24 P.3d 948 (omission in original) (citations omitted); see also id. ¶46 (affirming the trial court's denial of the defendant's motion for a mistrial because the victim's improper remark "did not render [the defendant's] trial so unfair that the trial court was 'plainly wrong'").

## ANALYSIS

¶8 To establish that Defendant filed a wrongful lien, the State was required to prove beyond a reasonable doubt that Defendant "knowingly ma[de], utter[ed], record[ed], or file[d[5]] a lien[[6]]" and that Defen-

---

4. The State also charged, but later dropped, four counts of retaliation against a witness, victim, or informant, see Utah Code Ann. § 76–8–508.3 (2008).

5. At trial, the jury was correctly instructed that "filing," see Utah Code Ann. § 76–6–503.5(1)(a) (2008), means presenting "a record to a filing

office and tender[ing] ... the filing fee or acceptance of the record by the filing office," Utah Code Ann. § 70A–9a–516(1) (2009).

6. The jury was also correctly instructed that a "lien" may be defined as either (1) "any instrument or document that creates or purports to create a lien or encumbrance on an owner's

dant "ha[d] no objectively reasonable basis to believe he ha[d] a present and lawful property interest in the property or a claim on the assets." Utah Code Ann. § 76-6-503.5(2)(a) (2008).

### I. Judicial Notice

¶ 9 During the State's presentation of its case-in-chief, and over Defendant's objection, the trial court took judicial notice of Judge Quinn's prior determination that the Administrative Judgment recorded in 2004 was a wrongful lien:

> Ladies and gentlemen of the jury, the Court is taking … judicial notice of the action of another court of this state. The document entitled "consent judgment" recorded on January 24, 2007, that's been received as Exhibit No. 1 contains a reference to a right in Administrative Judgment Claim AJ-27-21-98, dated 12 November 2004.
>
> You are hereby instructed that said document referenced therein as administrative judgment was determined previously by a court of competent jurisdiction of this state to be a wrongful lien. You may consider the previous decision of that court finding that the administrative judgment was a wrongful lien in your deliberations in this case. And you may give that previous decision the weight you think it deserves.

¶ 10 Defendant asserts that the trial court violated rules 201 and 403 of the Utah Rules of Evidence by taking this judicial notice. Even if Defendant could establish that the trial court violated a rule of evidence, to succeed, he must also establish that he was prejudiced by any error. *See* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.");

interest in real or personal property or a claim on another's assets," Utah Code Ann. § 76-6-503.5(1)(c) (2008), or (2)
 any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:
 (a) expressly authorized by this chapter or another state or federal statute;
 (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

*State v. Knight,* 734 P.2d 913, 920 (Utah 1987) ("For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict."); *see also Redevelopment Agency v. Jones,* 743 P.2d 1233, 1235 (Utah Ct. App.1987) (determining that although the trial court erred in taking judicial notice, the error was harmless because other properly admitted evidence "independently support[ed] the jury verdict"). Defendant contends that the trial court's acknowledgment that the Administrative Judgment was a wrongful lien was prejudicial because, although the Administrative Judgment and the Consent Judgment were admitted into evidence, no other evidence was presented during the trial to establish that the Consent Judgment "create[d] or purport[ed] to create a lien," and the Consent Judgment *itself* does not "create[ ] or purport[ ] to create a lien," *see* Utah Code Ann. § 76-6-503.5. We disagree.

¶ 11 First, the Consent Judgment's language clearly "purports to create a lien." *See id.* The Consent Judgment lists the names and addresses for the Paces, Rivers, and Judge Davis and labels them as debtors. It then states that the debtors have given Defendant "proxy power of attorney to act for [them]" and that the Administrative Judgment, "incorporated by reference herein, be ratified, confirmed, and incorporated in this Consent Judgment." Other portions of the Consent Judgment state that the debtors are "severally & jointly" obligated to perform and to pay "all liability, debt or obligations incurred under Administrative Judgment." The Consent Judgment provides that the debtors "agree that $4,200,000.00 constitutes the total amount due and owing, by [d]ebtors," and "that the Statement and Demand,"

 (c) signed by or authorized pursuant to a document signed by the owner of the real property.
Utah Code Ann. § 38-9-1(6) (2005) (current version at *id.* § 38-9-1(6) (Supp.2010)); *see also* Utah Code Ann. § 76-6-503.5(1)(b) (2008) (" 'Lien' means: … any instrument or document described in Subsection 38-9-1(6)…."). Defendant does not object to the entry of these jury instructions defining parts of a wrongful lien conviction.

which is described as part of the Administrative Judgment, "is a 'true bill in commerce' which by operation of law provides 90 days to discharge the 'account receivable' or the account become[s] a 'commercial lien.'" There is no dispute that the ninety days had expired. Throughout the Consent Judgment, there are additional references to the lien status of the document, including that the parties "agree that after 90 days an unpaid debt due to the [Defendant], may be assigned giving a new owner a Right of Lien to execute a Lien Hold Claim against Debtors' property, holding claim until the 1st day of January, 2105."

¶ 12 The Consent Judgment also specifies that a

> Creditor's Right of Lien is in the nature of a commercial lien and is not a lis pendens lien, and is not a statutory lien, and is not a common law lien, and does not require a court process for its establishment, validity, or execution, and it cannot be removed by summary process (judge's discretion), nor by anyone except the authorized Lien Holder.

The Consent Judgment allows "the authorized Lien Holder [to] open any administrative procedure for further remedy or relief until the attainment of the ends of justice have been satisfied." And, finally, the Consent Judgment states that "the administrative admitted facts in this Consent Judgment are not subject to reconsideration in any action in Law, Commerce, or otherwise, and [that] this Consent Judgment shall be recorded for a perpetual memory and testimony." Thus, the document itself clearly purports to create a commercial lien.[7]

¶ 13 Second, additional evidence in the form of Judge Davis's testimony was presented about the subject of the judicial notice. Specifically, he testified that Judge Quinn had determined that the Administrative Judgment was a wrongful lien against Judge Davis.

¶ 14 Additionally, the judicial notice focused solely on the Administrative Judgment. Although the Administrative Judgment referred to the Consent Judgment, the criminal charges against Defendant were based upon the Consent Judgment alone. Furthermore, at Defendant's request, the jury did not receive any written documentation of Judge Quinn's determination regarding the Administrative Judgment.

¶ 15 Therefore, even if the trial court violated the rules of evidence by taking judicial notice, that evidence was merely cumulative of what could be determined by the express language of the Consent Judgment and Judge Davis's testimony. From the face of the Consent Judgment alone, the evidence is overwhelming that Defendant purported to create a lien on the victims' assets. Consequently, we conclude that the trial court properly submitted the question of whether the Consent Judgment was a "lien" to the jury, and Defendant did not suffer prejudice from any mistake regarding the judicial notice because there is no reasonable likelihood that the result would have been different in the absence of the judicial notice. Thus, any error by the trial court in taking judicial notice of Judge Quinn's conclusion about the Administrative Judgment was harmless.[8]

7. By concluding that the Consent Judgment purports to create a lien, we do not suggest that it actually created a valid lien on the real or personal property of the Paces, Rivers, or Judge Davis.

8. We recognize that while the trial court gave the parties notice and an opportunity to contest the judicially noticed fact, *see In re C.Y.*, 765 P.2d 251, 254 (Utah Ct.App.1988), Defendant raises legitimate concerns about whether the trial judge in a criminal case can properly take judicial notice of another court's determination in a related civil matter. Utah courts have not previously decided whether this is proper under rule 201 of the Utah Rules of Evidence, and because of the facts of this case, neither will we. However, we note that federal courts have determined that rule 201 of the Federal Rules of Evidence does not allow a court to take judicial notice of facts determined in another case, but courts are only allowed to take judicial notice of whether a filing has been made in another case. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir.1998); *see also* Federal Rules of Evidence Manual § 201.02 (Matthew Bender & Co. 2010) ("The distinction is therefore between the existence of judicial records and the truth of the facts recorded. A Court can take judicial notice that a pleading was filed or that a judgment was entered. Likewise, a Court can take judicial notice that court filings contained certain allegations, or that findings of fact were made by another Court. But the truth of these allegations and findings

## II. Mistrial

¶ 16 "[A] district judge is in an advantaged position to determine the impact of courtroom events on the total proceedings...." *State v. Allen*, 2005 UT 11, ¶ 39, 108 P.3d 730, *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005). Therefore, "once a district court has exercised its discretion and denied a motion for a mistrial, we will not reverse the court's decision unless it 'is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial.'" *Id.* (citation omitted).

■ ¶ 17 The parties stipulated before trial that, because Judge Davis was not designated as an expert witness, he could "not make reference to his legal opinion." During the State's direct examination of Judge Davis, the following exchanges occurred:

[State]: [T]ell the jury, Judge Davis, briefly about the case that I'm assuming you're believing is ... the only reason that you have a $4.2 million lien filed against you?

[Judge Davis]: I have no idea why I have a $4.2 million lien filed against my wife and my home. We own our home. It's a modest home. We've worked hard through our entire lives. It's paid for. And now there's a cloud on the title as it relates to $4.2 million and ... I don't have the foggiest clue as a matter of law how that came about other than the fact these so-called gibberish documents have been filed with the Office of the Utah County Recorder's and clouded the title on our home.

. . . .

[State]: I want to ask you whether or not this document that has been filed against you for $4.2 million is meaningless in your eyes?

. . . .

[Judge Davis]: Listen, that document has generated two additional lawsuits, tons of judicial time, taxpayer's dollars to get these matters resolved, has been a cloud on the property, the good property of my wife and myself. To call it meaningless is almost an absurdity. Whether it's legal or not, that's another question.... We do have two judgments from judges as it relates to that. It says that it's void.[9]

¶ 18 Defendant did not object to these questions at the time they were asked, nor did he move to strike Judge Davis's answers. Moreover, during Defendant's cross-examination of Judge Davis, Defendant elicited additional testimony, possibly more damaging than the testimony given during the direct examination, about Judge Davis's view of the effectiveness of the Consent Judgment. For example,

[Defense Counsel:] [Y]ou said that ... these two documents cloud the title to your home?

[Judge Davis:] Sure. Absolutely.

[Defense Counsel:] Now, correct me if I'm wrong, please, a lien is, in essence, a document or something that says that a person owes someone money and they're attaching that debt to a property?

[Judge Davis:] Correct. That's what [Defendant] did. He indicated that it applied both to my real property and any personal property that I had.

. . . .

[Defense Counsel:] What I'm asking [is if] it attaches to your real property?

[Judge Davis:] It's a commercial lien. It's a right of lien. He is a lienholder ... claimant. He's indicated in the document—consent document that it cannot be set aside by a court of law, cannot be removed by any summary process, by any judge, nor anyone except him. They're not subject to reconsideration in any action in law and it shall be recorded for a perpetual memory and testimony pursuant to The Hague Convention.

. . . .

[Defense Counsel:] [The Consent Judgment] doesn't say ... that it's actually establishing the lien; it's just describing

---

are not proper subjects of judicial notice."). Additionally, "[r]ule 201 authorizes the court to take notice only of 'adjudicative facts,' not legal determinations." *Taylor*, 162 F.3d at 831.

9. The prosecutor's direct examination concluded after Judge Davis finished this answer.

what that commercial lien will be if it became a commercial lien, does it not?

[Judge Davis:] No. It's an authorized lienholder. This is a consent judgment, counsel.

. . . .

[Defense Counsel:] Now you indicated that these documents put a cloud on your home?

[Judge Davis:] Absolutely.

[Defense Counsel:] Nowhere in these documents does it list your home address; correct?

[Judge Davis:] No. As you heard the County Recorder before say it can do it by name, it can do it by legal description of property, it can do it by a serial number of property. And it lists my name as a debtor of $4.2 million.

. . . .

[Defense Counsel: Before having the lien removed, did you run] a title search to see if, in fact, these things actually . . . clouded your title?

[Judge Davis:] I didn't run a title search. I didn't want to spend hundreds of dollars to do so in connection with these filings, counsel.

[Defense Counsel:] So you're presuming that they actually clouded the title of your home then based on your legal experience?

[Judge Davis:] Oh, absolutely.

[Defense Counsel:] But you don't actually have actual knowledge of that?

[Judge Davis:] I think I have actual knowledge of the fact that if you file a consent judgment that has $4.2 million in it you're referred to as a debtor and you owe that $4.2 million to [Defendant] that that clouds the title of your property.

[Defense Counsel:] That's your legal opinion?

[Judge Davis:] That's my legal opinion.

. . . .

[Defense Counsel:] Now, . . . if a plaintiff came to court to enforce those so-called administrative and consent judgments

[and] came before you as a judge and asked you to enforce those, would you?

[Judge Davis:] Heavens no.

[Defense Counsel:] They have no legal basis in the State of Utah; correct, to support them?

[Judge Davis:] That's what I have argued for four long years in terms of setting these aside and getting the cloud off my property, yes sir. Absolutely.

¶ 19 Although defense counsel elicited the vast majority of the challenged testimony and did not move to strike Judge Davis's responses, the following day he moved for a mistrial on the ground that Judge Davis's testimony gave "incorrect statements of the law." Specifically, Defendant contended that because of Judge Davis's position as a judge his statement that "a judgment [from a district court] is a lien" that clouded his title "will have undue influence and great weight on the trial and would prejudice" Defendant. Additionally, Defendant argued that "Judge Davis volunteered all this information and he talked about them being liens, clouding his title as a matter of law during direct and cross-examination," [10] and that "he wasn't responsive to questions" and "continually rambled on." The trial court denied the motion, reasoning that Judge Davis's testimony did not misstate the law and that Defendant elicited Judge Davis's testimony.

¶ 20 On appeal, Defendant argues that the trial court should have granted a mistrial because "Judge Davis's testimony was so prejudicial, given the totality of the evidence and the materiality of the testimony, that [Defendant] was denied a fair trial." Although Defendant now argues that the State intentionally elicited the statements, this was not Defendant's contention before the trial court. There, he argued that Judge Davis had volunteered information that was unresponsive to the State's questions.

 ¶ 21 "A review of our case law amply reveals that a mistrial is not required where an improper statement is not intentionally elicited, is made in passing, and is relatively

---

**10.** Defendant later argued that he was following up on what Judge Davis "volunteered . . . in direct examination."

innocuous in light of all the testimony presented." *State v. Allen*, 2005 UT 11, ¶ 40, 108 P.3d 730, *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005). While we agree that the testimony was unhelpful to the defense, we are not convinced that the State is at fault for its admission because the State did not intentionally elicit the testimony. Additionally, given that the jury was able to review the Consent Judgment, Judge Davis's testimony was "relatively innocuous in light of all the [evidence] presented."[11] *See id.*

■ ¶ 22 Furthermore, because Defendant elicited the most damaging information, he invited any error. When defense counsel elicits the improper testimony, "the alleged error was invited by defendant's own counsel, and thus defendant is in no position to request a mistrial." *State v. Barney*, 681 P.2d 1230, 1231 (Utah 1984); *see also State v. Dominguez*, 2003 UT App 158, ¶ 33, 72 P.3d 127 ("Because the testimony complained of was initially elicited by defense counsel's cross-examination of [the witness], any error was invited. We have held repeatedly that on appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." (internal quotation marks omitted)). Unlike the direct examination during which Judge Davis's answers were unresponsive to the questions asked, on cross-examination defense counsel directly elicited the nature of Judge Davis's responses. Under the circumstances, Defendant cannot be heard to complain of the error he invited.

## CONCLUSION

¶ 23 Defendant's claim that the trial court violated the rules of evidence by taking judicial notice fails because he cannot establish that he was prejudiced by any error. Additionally, the trial court did not abuse its

discretion in denying Defendant's motion for a mistrial. Thus, we affirm.

¶ 24 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and CAROLYN B. McHUGH, Associate Presiding Judge.

---

11. Moreover, the trial court instructed the jury that Judge Davis was not an expert and that his testimony should be treated the same as any other witness. *See generally State v. Allen*, 2005 UT 11, ¶ 37, 108 P.3d 730 (considering in its analysis that the trial court offered a curative jury instruction regarding an improper comment), *cert. denied*, 546 U.S. 832, 126 S.Ct. 60, 163 L.Ed.2d 85 (2005); *State v. Harmon*, 956 P.2d 262, 271–73 (Utah 1998) (discussing the general acceptance of a trial court use of a cura-

tive jury instruction to remedy errors during trial and stating that " '[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant' " (quoting *Greer v. Miller*, 483 U.S. 756, 767 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987))).