2016 UT App 205

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
STEVEN MICHAEL FAIRCHILD,
Appellant.

Opinion
No. 20131118-CA
Filed September 29, 2016

First District Court, Logan Department
The Honorable Kevin K. Allen
No. 111101239

Thomas S. Bowman, Aaron K. Bergman, and Wayne
K. Caldwell, Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ORME, Judge:

¶1    Defendant Steven Michael Fairchild appeals the trial
court's denial of his motion for a new trial and its imposition of
consecutive sentences. The issues on appeal relate to the fairness
of the trial and sentence. We affirm.

BACKGROUND[1]

¶2     On November 16, 2011, Defendant and his girlfriend (Girlfriend) agreed to rob a bank. The couple left Logan, Utah, where Defendant resided, and drove to West Valley City, Utah, where friends paid them $100 to deliver psychedelic mushrooms the following day. Next, Defendant and Girlfriend drove to a pawnshop in Evanston, Wyoming, in the middle of the night. Girlfriend parked the car and waited for Defendant, who went inside, remained for less than two minutes, and returned with five guns.

¶3     The next day, the couple drove back to Logan, where they decided to rob a gas station instead of a bank. The couple entered the targeted gas station, Girlfriend wearing a red bandana and baggy clothing and Defendant dressed in a black ski mask, a black jacket, jeans, and white shoes. Each had a gun. Girlfriend remained by the gas station door as Defendant walked into the store toward the cash register. Defendant waved a gun in an employee's face and ordered her to open the cash drawer. Defendant stole the money from the register and a pack of Camel brand cigarettes and then fled. During the course of the robbery, a second employee came out of the storeroom, saw Defendant, and heard him order the first employee to "[o]pen the registers." She also saw Girlfriend.

¶4     That night, the couple bought and delivered the psychedelic mushrooms they had promised their friends. Meanwhile, police had been investigating the robbery at the gas station. As a part of the investigation, a third gas station employee (Employee) viewed surveillance video of the robbery,

---

1. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and," unless otherwise noted, "we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116.

which included a recording of the robber's voice. Based on his voice, Employee recognized the gunman as Defendant. She was familiar with Defendant's voice because of extensive interaction with him: he was a regular customer at the gas station; she had previously hired him to build her porch; and she had recommended him for a job at her other place of employment, where he was hired and where they occasionally crossed paths. Employee also identified him in a video from his November 13 visit to the gas station when she said that he bought Camel cigarettes from her.[2]

¶5    Police also showed photographs of the robbery to Defendant's parole officer (Parole Officer). Parole Officer observed that the male suspect's clothing matched the clothes Defendant wore during a parole visit the day before the robbery. Police arrested Defendant and Girlfriend on November 20. During the arrest, police searched Defendant's truck and found Girlfriend's bandana and wallet in the glove compartment, a pack of Camel brand cigarettes by the ashtray, a cooler that contained a large quantity of psychedelic mushrooms, and four guns.[3]

¶6    The State charged Defendant with one count of aggravated robbery, a first degree felony; four counts of possession of a firearm by a restricted person, a second degree felony; one count of possession of a controlled substance with intent to distribute, a second degree felony; and four counts of receiving stolen property, a second degree felony. The State also sought to enhance Defendant's sentence by having him designated as a habitual violent offender. The parties agreed that

---

2. At trial, Defendant testified that the cigarettes were Pall Mall brand, not Camel.

3. After delivering the psychedelic mushrooms, Defendant sold one of the guns.

the judge would determine whether Defendant was a habitual violent offender and that the remaining issues would be tried to a jury.

¶7    Before trial, the State moved to admit evidence, under rule 404(b) of the Utah Rules of Evidence, that Defendant was convicted of robbing two Logan banks in December 1998 and January 1999. The State argued that this evidence would show motive, plan, intent, and identity and that it was not attempting to impugn Defendant's character or establish his criminal propensity. The court denied the State's motion and ordered that it not put on evidence of Defendant's prior crimes at trial. One day before trial, Defendant moved to sever the "restricted person" requirement from the rest of the restricted-person-in-possession-of-a-firearm charge. Instead, the parties stipulated that the "restricted person" requirement was satisfied. The court agreed, ordering that it would instruct the jury as to Defendant's restricted status but "would not allow any evidence regarding [Defendant's] previous convictions or the reasons why he is a restricted person."

¶8    Despite the 404(b) pretrial order and the stipulation, there were multiple references to Defendant's status as a parolee during trial. First, during the State's opening statement, the prosecutor told the jury that Parole Officer "was a supervisor over [Defendant's parole]," and Defendant's trial counsel did not object. Indeed, trial counsel characterized Parole Officer in much the same way during his own opening statement. Later, Parole Officer testified that he knew Defendant in his capacity as a parole officer, stating that "in June of 2011, [Defendant] paroled from prison to my caseload." But he did not say why Defendant previously had been imprisoned, and the prosecutor asked no follow-up questions. Defendant objected and moved for a mistrial. The trial court denied the mistrial motion.

¶9    During closing arguments, Defendant's trial counsel and the prosecutor each referred to Defendant's status as a parolee. First, trial counsel said, "in the late fall of 2011, [Defendant] and

[Girlfriend] went to the office of [Parole Officer]. They asked . . . permission to live together, to further their relationship. [He] granted their request." And the prosecutor repeated Parole Officer's name and title before stating, "He supervised the defendant."

¶10 When the court was preparing to instruct the jury that Defendant was a restricted person, the prosecutor suggested that the instruction include that Defendant was on parole at the time of the gas station robbery. The court refused, stating, "Well, I don't want to bring any more attention to that fact, frankly. I shouldn't have—well, parole, we're okay with that." The court ultimately issued a limiting instruction, informing the jury that Parole Officer only mentioned Defendant's parole to show that he

> knows the defendant and is familiar with him. Do not use it for any other purpose. It is not evidence that the defendant is guilty of the crimes for which he is now on trial. . . . You may not convict a person simply because you believe he may have committed some other acts at another time.

¶11 The jury also heard testimony from Girlfriend, the two employees who were at the gas station during the robbery, and Employee. One of the employees testified that the robber had blue eyes, but Defendant has brown eyes. The State also presented the gas station's surveillance video, which showed the male suspect wore a dark hooded jacket, jeans, and white shoes. And it presented evidence of the items police found in Defendant's truck—the bandana, wallet, Camel cigarettes, psychedelic mushrooms, and guns.

¶12 The jury returned a guilty verdict on each of the ten counts against Defendant. The court then initiated a bench trial on the issue of whether Defendant was a habitual violent offender. It determined that he was. At sentencing, the trial court imposed indeterminate sentences of five years to life for

aggravated robbery and each of the four weapons possession charges, one to fifteen years for the drug possession charge, and one to fifteen years for each theft by receiving stolen property charge. The court ordered that these sentences run consecutively to each other and to the sentence Defendant was already serving.[4]

¶13    Defendant then filed a motion for new trial, arguing that the statements during trial that he was on parole violated the pretrial order and unfairly prejudiced him. The court denied Defendant's motion, ruling that Parole Officer's testimony did not violate the pretrial order and that, even if it did, the error was harmless both because the totality of the evidence supported conviction and because the curative instruction ameliorated any potential harm.

¶14    Finally, Defendant filed a motion challenging the legality of his sentence. Citing Utah Code section 76-3-401, he asserted that consecutive sentences can never exceed thirty years. The trial court denied the motion on the ground that Defendant received five sentences with a maximum sentence of life imprisonment and the thirty-year limitation does not apply to offenses with the possible maximum sentence of life imprisonment. *See* Utah Code Ann. § 76-3-401(1)(6)(b) (LexisNexis 2012). Defendant appeals the trial court's denial of his motion for a new trial and his sentence.

ISSUES AND STANDARDS OF REVIEW

¶15    Defendant first argues that the trial court erred when it denied his motion for new trial because, as he contends, the multiple references to his status as a parolee violated the trial

---

4. Having been on parole before robbing the gas station, Defendant returned to prison to serve his remaining sentence for a prior bank robbery soon after his November 20 arrest.

court's pretrial order and his rights to due process, the presumption of innocence, and a fair trial. "We will not reverse a trial court's denial of a motion for a new trial absent a clear abuse of discretion." *State v. Maestas*, 2012 UT 46, ¶ 103, 299 P.3d 892. A trial court abuses its discretion where "no reasonable [person] would take the view adopted by the trial court." *State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978). "[W]e review the legal standards applied by the trial court in denying such a motion for correctness . . . [and] the trial court's factual findings for clear error." *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citation and internal quotation marks omitted).

¶16   Defendant also argues that his sentence is illegal because the trial court did not expressly consider the mandatory sentencing factors and ordered ten consecutive sentences, meaning—in Defendant's view—that he will not be eligible for parole for another seventy years. Defendant insists that the trial court did so "with an admitted purpose of depriving the Board of Pardons of any consideration for rehabilitation." Trial courts have broad discretion in sentencing. *State v. Fedorowicz*, 2002 UT 67, ¶ 63, 52 P.3d 1194. Thus, we ordinarily review sentencing decisions for an abuse of discretion. *State v. McDonald*, 2005 UT App 86, ¶ 9, 110 P.3d 149. But when the legality of a sentence is challenged, a question of law is presented, which we review for correctness. *See State v. Houston*, 2015 UT 40, ¶ 16, 353 P.3d 55; *State v. Yazzie*, 2009 UT 14, ¶ 6, 203 P.3d 984.

ANALYSIS

I. New Trial Motion

¶17   Defendant first asserts that the trial court abused its discretion when it denied his motion for new trial. He contends that he is entitled to a new trial because Parole Officer's testimony and the other references to his status as a parolee violated the trial court's pretrial order and denied him his rights to due process, the presumption of innocence, and a fair trial. "A

trial court may grant a new trial 'in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party.'" *Maestas*, 2012 UT 46, ¶ 103 (quoting Utah R. Crim. P. 24(a)).[5] A new trial is not necessary, however, where the errors "are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Verde*, 770 P.2d 116, 120 (Utah 1989). Accordingly, a new trial is not merited where the errors are harmless. *Id.*

¶18    We are not convinced that the trial court had to exclude all evidence of Defendant's status as a parolee. Defendant argued that he was not the man who robbed the gas station, meaning the State had to prove the suspect's identity, and evidence of past crimes may be admissible to help establish identity. *See* Utah R. Evid. 404(b)(2). But having ruled in its pretrial order that "evidence pertaining to the prior robberies" could not be admitted at trial, it is perplexing that the trial court permitted the jury to hear references to Defendant's status as a recently released parolee in opening and closing argument and during Parole Officer's testimony. *See State v. Decorso*, 1999 UT 57, ¶ 21, 993 P.2d 837 ("[I]f the court determines that the evidence is being offered only to show the defendant's propensity to commit crime, then it is inadmissible and must be excluded at that point."). Because the trial court had already determined in its pretrial order that the evidence violated rule 404, the evidence should not have been admitted and failure to exclude it was erroneous.

---

5. Under certain circumstances harm is presumed, *State v. Maestas*, 2012 UT 46, ¶ 53, 299 P.3d 892, but Defendant has made no such argument. Thus, we only consider whether Defendant suffered actual prejudice.

¶19     Nevertheless, we cannot conclude that Defendant was prejudiced by these statements.[6] In denying Defendant's motion for new trial, the trial court correctly concluded that any violation of its pretrial order was harmless. Errors are harmless when "there is no reasonable likelihood that the error affected the outcome of the proceedings." *Verde*, 770 P.2d at 120. And we require that the error be substantial enough that "the likelihood of a different outcome [is] sufficiently high to undermine confidence in the verdict." *State v. Knight*, 734 P.2d 913, 920 (Utah 1987). *Cf. State v. Houskeeper*, 2002 UT 118, ¶ 26, 62 P.3d 444 ("[E]ven if we assume that the evidence was improper, an appellate court will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably [a]ffect the likelihood of a different verdict.").

¶20     Here the challenged statements were harmless because even excluding the challenged statements, the jury had before it ample evidence to support Defendant's convictions. Defendant based his entire defense on the theory that someone else committed the robbery. Thus, evidence tying Defendant to the crime would have been particularly useful to the jury in weighing the facts. And the jury heard testimony from several

---

6. Defendant also argues on appeal that a new trial was merited because the trial court committed plain error when it failed to stop the State from eliciting the problematic testimony from Parole Officer and because trial counsel was ineffective for failing to object to that testimony. We decline to separately address these issues because regardless of whether the trial court committed plain error or trial counsel was ineffective, we are not convinced that Defendant was harmed by the statements in question. By holding that the trial court's error in permitting the jury to hear references to Defendant's parole status was harmless, we necessarily also conclude that its failure to act sua sponte to prevent the testimony and trial counsel's failure to challenge the testimony were harmless.

witnesses who placed Defendant at the scene of the robbery. The State also presented physical evidence linking him to the drug and gun crimes. When the weight of the evidence supports conviction, we will not reverse merely because one bit of evidence was tainted. *See, e.g.*, *State v. Dalton*, 2014 UT App 68, ¶¶ 30–32, 331 P.3d 1110 (declining to overturn a jury verdict on the basis that the jury heard inadmissible character evidence and determining "[t]here was abundant other evidence to support" the verdict when two witnesses, including the victim, testified to the issue in dispute).

¶21 At Defendant's trial, there were four witnesses, other than Parole Officer, who identified Defendant as the robber. Girlfriend testified to her own role in the crimes and that Defendant, her then-boyfriend, was her accomplice. It is conceivable that she fabricated her story, given that she agreed to testify against Defendant as part of a plea bargain and that their relationship had soured, but such circumstances present a credibility question for the jury to resolve. *See State v. Dunn*, 850 P.2d 1201, 1213 (Utah 1993). And because her story was consistent with the other evidence presented by the State, a reasonable jury could find her credible. The State also offered testimony from three gas station employees. The two employees who were at the gas station at the time of the robbery were eyewitnesses, who described the clothes the male and female robbers wore during the robbery. Employee, who knew Defendant well, identified Defendant based on the sound of his voice on the video recording of the robbery.

¶22 Furthermore, there was extensive physical evidence implicating Defendant in the crimes. Upon searching his truck, police found a cooler containing psychedelic mushrooms, which supported Girlfriend's account and the drug charges; multiple firearms, which supported Girlfriend's account and the weapons possession charges; a pack of Camel filtered cigarettes, which supported Girlfriend's account, one store employee's account, and the robbery charge; and Girlfriend's wallet and bandana,

which linked her—and him through her testimony—to the robbery. Thus, there was substantial evidence upon which a reasonable jury could conclude that Defendant was in fact the perpetrator of these crimes.

¶23   Additionally, any potential harm to Defendant was limited because the references to his parole status were sporadic and vague. A serious problem was averted because the specific nature of his past crimes was never discussed. For all the jury knew, Defendant might have been on parole for cattle rustling or tax evasion rather than bank robbery. And the trial court sought to limit the impact of the references by giving a curative instruction. The Utah Supreme Court has held that both of those factors—the absence of details regarding the past crimes and the use of a curative instruction—limit the potential harm to a defendant. *State v. Griffiths*, 752 P.2d 879, 883 (Utah 1988). *See also State v. Allen*, 2005 UT 11, ¶¶ 11, 42–44, 108 P.3d 730 (affirming the district court's denial of a mistrial following a witness's statement that the defendant was asked to take a lie detector test when "the reference was vague" and did not include details such as the defendant's having taken and failed the test and where the court gave a curative instruction); *State v. Cooper*, 2011 UT App 412, ¶ 21 n.11, 275 P.3d 250 (identifying several cases in which curative instructions have successfully been used to remedy errors at trial).

¶24   Nonetheless, Defendant asserts that he was harmed because the jury could not reasonably have concluded that he was guilty based only on the properly admitted evidence and would not have so concluded had it not heard evidence of his parole status. While Defendant disputes the strength of the evidence against him, the points Defendant raises—including the testimony that the male robber's eyes were blue, while his are brown, and that the stolen cigarettes were Camels, while he smokes Pall Malls—are insubstantial under the circumstances and do not undermine the overwhelming evidence supporting his convictions. *Cf. State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346

("[A] defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury.").

¶25    Thus, the references to Defendant being out of prison on parole did not prejudice Defendant. Because he was not prejudiced, the trial court did not abuse its discretion in denying his motion for a new trial.

## II. Sentence

¶26    Defendant also contends that the trial court abused its discretion in sentencing him. He first insists that the trial court failed to consider the statutory sentencing factors, in violation of Utah Code section 76-3-401. Second, he argues that the sentence of ten prison terms to be served consecutively means the total minimum time he will serve is thirty years, beginning only after he completes his previous prison sentence, making it likely he will be in prison for about seventy years total. Defendant argues this amounts to a de facto life sentence that deprives the Board of Pardons and Parole of its lawful discretion.

### A.    Statutory Factors

¶27    Defendant argues that the trial court failed to consider the factors set out in Utah Code section 76-3-401, which states that a court deciding whether multiple felony offenses merit concurrent or consecutive sentences "shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76-3-401(2) (LexisNexis 2012). On appeal, we will only review claims that were properly preserved in the trial court because it is "in the interest of orderly procedure[ that] the trial court . . . be given an opportunity to address a claimed error and, if appropriate, correct it." *Holgate*, 2000 UT 74, ¶ 11 (citation and internal quotation marks omitted). Stated another way, for a claim to be properly before us, appellants must first have

"raise[d] the issue in the trial court 'in such a way that the trial court has an opportunity to rule on that issue.'" *State v. Bird*, 2015 UT 7, ¶ 10, 345 P.3d 1141 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366). And appellants must also provide us with a record citation, documenting that their claims were preserved. Utah R. App. P. 24(a)(5)(A).[7]

¶28    Defendant asserts that his "Motion for New Sentence and Motion to Correct Sentence" preserved his sentencing-factors argument. But that motion did not specifically address the sentencing factors, instead asserting that under Utah Code section 76-3-401(6)(a) consecutive sentences can never exceed thirty years.[8] The Supreme Court has identified three factors to help courts assess whether a claim is properly preserved: (1) whether the issue was timely raised, (2) whether the issue was specifically raised, and (3) whether appellant "introduce[d] supporting evidence or relevant legal authority." *Pratt*, 2007 UT 41, ¶ 15 (citation and internal quotation marks omitted). Because Defendant's motion did not specifically raise his sentencing-factors argument with the trial court, and he points us to no other place in the record preserving the issue, we conclude that

---

7. Other than his argument that we should review the sentence under rule 22(e) of the Utah Rules of Criminal Procedure, *see infra* ¶ 29, Defendant has not argued the applicability of any of the exceptions to our preservation rule.

8. The trial court concluded that the sentence in this case does not violate the thirty-year limitation because it falls into one of the statutory exceptions, namely that he was sentenced for five offenses that carry a potential maximum sentence of life imprisonment. The statute allows consecutive sentences to exceed thirty years when "an offense for which the defendant is sentenced authorizes the death penalty or a maximum sentence of life imprisonment." Utah Code Ann. § 76-3-401(6)(b)(i) (LexisNexis 2012).

he did not provide the trial court with an opportunity to rule on the issue and that it is not preserved for appeal.

¶29 Defendant argues, however, that regardless of whether his claim was properly preserved for appeal in the usual way, rule 22(e) of the Utah Rules of Criminal Procedure allows this court to "correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim. P. 22(e). Unfortunately for Defendant, rule 22(e) is not the kind of catch-all he envisions, but is instead reserved for correcting "patently or manifestly illegal sentence[s]." *State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 (citation and internal quotation marks omitted). Because they are not limited by our preservation requirement, "rule 22(e) claims must be narrowly circumscribed to prevent abuse," *State v. Telford*, 2002 UT 51, ¶ 5, 48 P.3d 228 (per curiam), and they do not include "ordinary or 'run-of-the-mill' errors regularly reviewed on appeal under rule 4(a) of the Utah Rules of Appellate Procedure," *Thorkelson*, 2004 UT App 9, ¶ 15. Thus, for purposes of rule 22(e), an illegal sentence is one that "'is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize.'" *State v. Yazzie*, 2009 UT 14, ¶ 13, 203 P.3d 984 (quoting *United States v. Dougherty*, 106 F.3d 1514, 1515 (10th Cir. 1997)) (defining illegal sentences in double jeopardy context). *Accord State v. Dana*, 2010 UT App 374, ¶ 6, 246 P.3d 756 (applying the *Yazzie* definition in holding a sentence was illegal for rule 22(e) purposes).

¶30 Defendant argues that instead of using the statutory factors to guide his sentencing, the court relied on a variety of objectionable items. First, he suggests that the court intended "to deprive anyone from second guessing the decision to lock [Defendant] in prison and throw away the key." Defendant also contends that the prosecutor misrepresented the employees' testimony regarding the fear they felt, that there were

discrepancies in the evidence the court relied on in sentencing, and that the court made generalizations about Defendant's unmet potential instead of identifying the specific facts and circumstances that informed its sentencing decision. These alleged sentencing errors are not "patently" or "manifestly illegal"; they are "run-of-the-mill errors regularly reviewed on appeal under rule 4(a) of the Utah Rules of Appellate Procedure." *Thorkelson*, 2004 UT App 9, ¶ 15 (citations and internal quotation marks omitted).

¶31 And because Defendant has not otherwise preserved the issue, we decline to review the challenge to his sentence based on the claim that the trial court failed to consider the statutory sentencing factors in imposing sentence.

B.     Board of Pardons Discretion

¶32 Defendant next argues that the trial court abused its discretion by imposing what he characterizes as a de facto life sentence. He insists that by ordering him to serve so many consecutive sentences the trial court has kept the Board of Pardons from having the opportunity to review his case for another seventy years, which would be after his 102nd birthday. He contends that this is an illegal sentence under the Utah Constitution's grant of broad discretion to the Board to determine whether a prisoner is to be paroled, *see* Utah Const. art. VII, § 12(2)(a), because he cannot reasonably expect to survive beyond the time required by the sentence, which he asserts would be the first time the Board could lawfully review his sentence. But Defendant's theory assumes that while the Board has the discretion to review maximum sentences, it does not have the ability to review minimum sentences.[9] This is simply not the case.

---

9. Defendant relies on *State v. Smith*, 909 P.2d 236 (Utah 1995), in asserting that consecutively served sentences that total more

(continued…)

¶33    We have recently characterized the roles of the sentencing court and the Board as "'two separate and distinct powers'" within our indeterminate sentencing system. *State v. Gray*, 2016 UT App 87, ¶ 31, 372 P.3d 715 (quoting *Padilla v. Utah Board of Pardons & Parole*, 947 P.2d 664, 669 (Utah 1997)). The sentencing court sets indeterminate sentences in accordance with the relevant statutes, and the Board subsequently reviews those indeterminate sentences at any time during the course of the sentence to determine the appropriate sentence an inmate will actually serve. *See Gray*, 2016 UT App 87, ¶ 31. Under that system, the trial court does not have the power, as Defendant fears, to limit the Board's discretionary review.

----

(…continued)

years than the defendant can reasonably expect to live denies the Board of its discretion. While Defendant correctly identifies a substantial concern the Supreme Court expressed in *Smith*, *see id.* at 244–45, he fails to acknowledge that the legal landscape has shifted since that decision was issued. In 1996, the Legislature revised the relevant statutes to make clear that the Board indeed has plenary and unreviewable discretion, so long as it takes steps to assure that inmates receive due process. Utah Code Ann. § 77-27-5(3) (LexisNexis 2012). Thus, the Board is now authorized to review a sentence at any time. When the trial court says the Board will be able to review the sentence is of no moment, and we decline to take judicial notice, as Defendant has asked us to do, of the date on which his first parole hearing is currently set, as even that is subject to change in the exercise of the Board's broad discretion. *See Finlayson v. Finlayson*, 874 P.2d 843, 847 (Utah Ct. App. 1994) ("Judicial notice is taken on appeal only where there is a 'compelling "countervailing principle" to be served.'") (quoting *Mel Trimble Real Estate v. Monte Vista Ranch, Inc.*, 758 P.2d 451, 456 (Utah Ct. App. 1988)).

CONCLUSION

¶34    Defendant has not shown that he was harmed by the admission of evidence that he was recently released from prison and on parole, even though that evidence violated the trial court's pretrial order. And he has not demonstrated that the trial court abused its discretion in denying his motion for new trial. Defendant failed to preserve his claim that the trial court did not properly consider the statutory sentencing factors in imposing his sentence, and that gap cannot be filled by rule 22(e) of the Utah Rules of Criminal Procedure because Defendant does not raise a facial challenge to the legality of his sentence. Nor did the sentence imposed intrude on the authority of the Board of Pardons and Parole.

¶35    Affirmed.

——————